IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No.: 03-CR-40050-JLF |
| ) | |
| PATRICK ORIEDO, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

**FOREMAN, District Judge:**

Before the Court is defendant's motion to suppress, (Docs. 133,146), and the government's response (Docs. 138,150). The parties have supplemented their pleadings, (Docs. 152,154,155), and the Court has held a hearing on the matter (Docs. 158, 164).

**I.   Background.**

On July 1, 2003, Jackson County Associate Circuit Judge E. Dan Kimmel signed a warrant authorizing law enforcement agents to search and to seize any evidence of the manufacturer and delivery of crack cocaine and other controlled substances contained within a black 2002 Pontiac Grand Am bearing Illinois license plate T21 3351 (Doc. 150, Exh.B). This warrant was supported by an affidavit from Special Agent Dale Reamy (Doc. 150, Exh.A).

On July 2, 2003, law enforcement agents performed a traffic stop on the black Grand Am for which they had the warrant. After the stop, the agents ordered the occupants out of the car. According to the government, defendant exited as the driver, and his co-defendant, (Antoine Smith), exited as the sole passenger. Also according to the government, agents

searched defendant and found a loaded .22 caliber revolver, and $1,575.00 in currency, of which $300.00 was prerecorded buy money. Agents then searched the black Grand Am pursuant to the search warrant and allegedly found:

1. An Enterprise Leasing Agreement in the name of Mallory Williams;

2. $1,300, of which $450.00 was prerecorded buy money;

3. Crack cocaine;

4. Cannabis;

5. Miscellaneous records; and

6. A wallet containing the I.D. card of Victor Newsome.

The agents then arrested defendant and Smith and took them to the Carbondale Police Department. According to the government, agents read defendant his *Miranda* rights, and gave him a copy of a *Miranda* form which defendant signed.

Defendant has been charged in an eight-count Third Superseding Indictment charging him with conspiracy to distribute fifty (50) grams or more of crack cocaine, distribution of crack cocaine, using a firearm during a drug trafficking offense, and possession of a firearm by a felon (Doc. 125). Defendant has moved to suppress any items that were seized pursuant to the search warrant and/or the traffic stop as well as suppress his post-arrest statements. On January 23, 2006, the Court conducted a hearing on the motion which is discussed below.

**II.     Discussion.**

    **A.     Motion to Suppress the Items Seized From the Black Grand Am.**

Defendant moves to suppress the items seized from the black Grand Am. According to the government, however, the black Grand Am was owned by Enterprise Leasing Company and had been rented, not by defendant, but by his girlfriend, Mallory Williams. Thus, argues the government, defendant was not an authorized driver of the rented black Grand Am, and as such, defendant has no standing to challenge the search. (See Doc. 150, Exh. C, (Under Additional Authorized Driver section, Enterprise Agreement states that "NO OTHER DRIVERS [ARE] PERMITTED")).

Initially, defendant opposed the government's argument that he did not have standing to challenge the search, and requested a hearing on the issue. (See Doc. 154, p.1, e.g., "[W]hat evidence is there that Defendant did not pay to rent the vehicle in question? What evidence is there that Defendant was not more involved in the rental of the vehicle in question other than simply driving?"). As such, and pursuant to defendant's request, the Court set a hearing to explore, in part, the circumstances surrounding the vehicle rental that may be relevant to defendant's motion to suppress (Doc. 157).

At the hearing, however, defense counsel stated that defendant had decided to concede that he lacks standing to challenge this portion of the motion to suppress because at the time of the July 2, 2003 traffic stop, defendant he did not have a valid driver's license. Accordingly, because defendant concedes this portion of the motion, and because he did not have a valid driver's license at the time of the traffic stop, the Court finds that defendant

lacks standing to challenge the search of the rental car. *See United States v. Haywood*, 324 F.3d 514, 516 (7th Cir. 2003) (unauthorized, unlicensed driver, absent other unique circumstances, does not have a reasonable expectation of privacy in a rental car). Accordingly, defendant's motion to suppress the evidence that was seized during the search of the black Grand Am is denied.

    **B.**    <u>**Motion to Suppress the Traffic Stop and Post-Arrest Statements**</u>**.**

Defendant also moves to suppress his post-arrest statements. Specifically, defendant's motion states that the "minimal requirements of *Miranda* were not accorded the Defendant by the officers and that Defendant's statements were obtained through the use of improper inducements and promises" (Doc. 146, p.1). Because defendant requested a hearing on this issue, (as well as on the issue regarding the circumstances of the rental car, (i.e., originally)), the Court conducted a hearing on this aspect of the motion to suppress as well (Doc. 157).

As noted, defendant claims that after he was arrested, law enforcement agents did not accord him the "minimal requirements of *Miranda*," and that his statements were obtained through the use of "improper inducements and promises" (Doc. 146). At the hearing, however, the government introduced Sergeant Joseph Keith Stiff (Tr.4). Sergeant Stiff testified that he did indeed advise defendant of the *Miranda* warnings, and that defendant would have signed a form that specifically waived his *Miranda* rights (Tr.10). This testimony was confirmed by Detective Randall T. Hall from the Murphysboro Police Department who also attended the interview (Tr.23). In addition, Detective Hall wrote a police report dated July 2, 2003, that confirms both his and Sergeant Stiff's testimony that

defendant was advised of his *Miranda* rights (Tr.26; Doc. 159, Exh. 3) ("Sgt. Keith Stiff initiated an interview with Patrick Orieda [sic] by advising Orieda of the Miranda Warning and allowing Orieda to read a printed copy of the Miranda Warning that Orieda understood and signed"). Although the agents have been unable to locate the exact form that defendant signed, a sample form is attached as Government's Exhibit 2 (Doc. 159, Exh. 2).

Defendant also claims that his statements were obtained through the use of "improper inducements and promises" (Doc. 146). Again, this claim is contradicted by the agents' testimony. Specifically, Sergeant Stiff testified that on July 2, 2003, he met with defendant in an interview room at the Carbondale Police Department at approximately 8:45 pm (Tr.7). He further testified that before interviewing defendant, he advised defendant of his *Miranda* rights and that defendant signed a *Miranda* waiver form (Tr.10). He further stated that defendant was not handcuffed, he was cordial and cooperative, and that he did not appear to have any difficulty understanding the questions or the nature of the interview (Tr.8,14). According to Sergeant Stiff, after he asked defendant a few questions, defendant stated that he wanted to exercise his right to have an attorney present (Tr.12). Sergeant Stiff testified that at that point, he and Detective Hall immediately concluded the interview (Tr.12). According to Sergeant Stiff, the entire interview lasted approximately 5 minutes (Tr.12). Detective Hall gave a similar account of the interview (Tr.24,25; Doc. 159, Exh. 3).

Also testifying for the government were Detectives Baril and Goddard (Tr.32,39). Detective Goddard testified that in October 2001, he arrested defendant for armed home invasion and armed robbery and took him to the Herrin Police Department (Tr.41). There,

Detective Baril advised defendant of his *Miranda* warnings, and defendant signed a waiver of *Miranda* form, similar to the one used by the Carbondale Police Department on July 2, 2003 (Doc. 159, Exhs. 2,4). Detective Baril testified that after he asked defendant a few questions, defendant stated that he was uncomfortable being interviewed and that he wanted an attorney (Tr.43-44). According to the Detectives Baril and Goddard, the interview was immediately concluded (Tr.38,44).

The Court notes that Sergeant Stiff's description of the interview with defendant was confirmed by Detective Hall's testimony, as well as by Detective Hall's police report (Tr.22-26; Doc. 159, Exh. 3). Specifically, a review of the report indicates that the officers asked a few simple questions after which defendant invoked his right to an attorney (Doc. 159, Exh. 3). The officers then terminated the interview (Doc. 159, Exh. 3).

"When a defendant makes a post-arrest statement, the government bears the burden of proving . . . that the statement was made following a voluntary, knowing and intelligent waiver of *Miranda* rights." *United States v. Jackson*, 300 F.3d 740, 748 (7th Cir. 2002) (*citing Miranda v. Arizona*, 384 U.S. 436 (1966)). As noted in *Jackson*,

> The absence of a signed waiver is not conclusive evidence on the issue of whether a defendant waived his rights. *United States v. Banks*, 78 F.3d 1190, 1198 (7th Cir.1996), *vacated on other grounds*, 519 U.S. 990, 117 S.Ct. 478, 136 L.Ed.2d 373 (1996). Rather, whether a person in custody knowingly and voluntarily waives his *Miranda* rights depends upon the totality of the circumstances. *Id.* A waiver need not be express, but may be "inferred from the defendant's understanding of his rights coupled with a course of conduct reflecting his desire to give up his right to remain silent and have the counsel of an attorney." *Id.* (citing Fare v. Michael C., 442 U.S. 707, 724, 99 S.Ct. 2560,

> 61 L.Ed.2d 197 (1979)). Courts typically look at such factors as defendant's background and conduct, the duration and conditions of detention, the mental and physical condition of the defendant, the attitude of the police, and whether the police utilized psychological or physical coercion. *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).

*Jackson*, 300 F.3d at 748.

Having observed the testimony of government witnesses Sergeant Stiff, and Detectives Hall, Baril, and Goddard, the Court finds the testimony of these individuals to be entirely credible. The Court also finds that Sergeant Stiff and Detective Hall's testimony is supported by the contents of Detective Hall's police report dated July 2, 2003, which appears to be an accurate report of the events that occurred. Although the testimony of Detectives Baril and Goddard involves an unrelated arrest and interview, their descriptions of the interview with defendant are consistent with the descriptions of the July 2, 2003 interview set forth by Sergeant Stiff and Detective Hall. Furthermore, the testimony of Detectives Baril and Goddard shows that defendant has prior experience with the criminal justice system, has understood and has signed a *Miranda* waiver in the past, and knows how to invoke his right to an attorney. Taking into account the totality of the circumstances as listed above, (i.e., defendant's background and conduct, the duration and conditions of detention, the mental and physical condition of the defendant, the attitude of the agents, and whether the agents utilized psychological or physical coercion, (i.e., here, none)), the Court finds that defendant's statements were made after he voluntarily, knowingly and intelligently waived his *Miranda* rights. Despite the lost *Miranda* waiver form, the Court finds that based on the

evidence produced at the hearing, defendant was advised of his *Miranda* warnings, and he voluntarily agreed to waive them. Accordingly, defendant's motion to suppress his statements is denied.

### III. Summary.

Based on the above, defendant's motion to suppress, (Doc. 133), is **DENIED**.

**IT IS SO ORDERED.**
**DATED:** February 13, 2006.

*s/ James L. Foreman*
**DISTRICT JUDGE**